******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOHN B. CLINTON *v.* MICHAEL E.
ASPINWALL ET AL.
(SC 20543)
(SC 20544)

Robinson, C. J., and McDonald, D'Auria,
Kahn, Ecker and Keller, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendants for their alleged breach of contract and of their fiduciary duties in voting to, inter alia, amend the operating agreement of a limited liability company, C Co., in which the defendants held a controlling interest and of which the plaintiff had been a member. The parties had organized C Co. pursuant to the operating agreement, which was governed by Delaware law. In addition to a claim concerning the allegedly improper vote to amend the operating agreement, the plaintiff also claimed that the defendants improperly had removed him as a member of C Co. and improperly had maintained a sizable capital reserve fund, even though it was no longer needed. The case was tried to a jury, which was directed, pursuant to a jury verdict form, to decide the plaintiff's breach of contract claims first and to decide the breach of fiduciary duty claims only if it found in favor of the defendants on the breach of contract claims. The plaintiff did not object to the jury verdict form. Thereafter, the jury found in favor of the plaintiff on his breach of contract claims but did not reach the fiduciary duty claims, which remained unadjudicated and never were disposed of by the trial court. The defendants filed two separate appeals with the Appellate Court, which affirmed the trial court's judgment as to the plaintiff's capital reserve fund claim but reversed the judgment as to the plaintiff's claims regarding the vote to amend the operating agreement and his removal as a member of C Co. The Appellate Court remanded the case with direction to render judgment for the defendants on the latter claims. On the granting of certification, the plaintiff and the defendants filed separate appeals with this court. *Held* that the Appellate Court lacked subject matter jurisdiction over the defendants' appeals to that court because there was no final judgment in the trial court, and, accordingly, this court vacated the Appellate Court's judgment and remanded the case with direction to dismiss the defendants' appeals: the issue of whether the defendants appealed from a final judgment was controlled by Connecticut procedural law, pursuant to which a trial court that has not disposed of all of the causes of action against an appellant is presumed to have implicitly disposed of any legally inconsistent, but not legally consistent, alternative theories; moreover, Delaware law controlled the substantive issues in the present case, and, although that state's law requires courts to dismiss fiduciary duty claims that have no independent basis apart from breach of contract claims, nothing about that policy suggested that the plaintiff's breach of contract and fiduciary duty claims were legally inconsistent, insofar as establishing the elements of one of those causes of action did not preclude liability with respect to the other cause of action under either Delaware or Connecticut law; accordingly, rather than being legally inconsistent, breach of contract and breach of fiduciary duty were more akin to legally consistent but alternative theories that prevent double recovery, and the issue of whether the plaintiff's fiduciary duty claims could proceed under Delaware law was left to the trial court; furthermore, the plaintiff did not withdraw or unconditionally abandon his fiduciary duty claims, even though he neither objected to the verdict form nor appealed from the Appellate Court's conclusion that he had abandoned his fiduciary duty claims by failing to object, and this court stressed that, to promote judicial economy, trial courts overseeing jury trials should always have the jury decide all counts of a complaint, except when doing so would result in a legally inconsistent finding that would require a new trial.

Argued April 27—officially released September 20, 2022

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Robaina, J.*, granted the plaintiff's motion for summary judgment with respect to the defendants' counterclaim; thereafter, the case was tried to the jury before *Shapiro, J.*; verdict for the plaintiff; subsequently, the defendants appealed to the Appellate Court; thereafter, the court, *Shapiro, J.*, denied the defendants' motions to set aside the verdict and for judgment notwithstanding the verdict and rendered judgment in accordance with the verdict, and the defendants filed an amended appeal; subsequently, the court, *Hon. Robert B. Shapiro*, judge trial referee, granted the plaintiff's motion for attorney's fees and costs, and the defendants filed a second amended appeal and a separate appeal with the Appellate Court, which consolidated the appeals; thereafter, the Appellate Court, *Lavine*, *Alvord* and *Harper, Js.*, reversed the trial court's judgment in part and remanded the case with direction to render judgment in part for the defendants and for further proceedings; subsequently, the defendants and the plaintiff, on the granting of certification, filed separate appeals with this court. *Vacated*; *judgment directed*.

*Garrett S. Flynn*, with whom was *Barbara M. Schellenberg*, for the appellants-appellees (defendants).

*Glenn W. Dowd*, with whom was *Howard Fetner*, for the appellee-appellant (plaintiff).

*Opinion*

D'AURIA, J. When a court renders judgment in a multicount civil action with fewer than all counts of a plaintiff's complaint accounted for in that judgment, jurisdictional alarm bells should ring if any party files an appeal, alerting the parties and the trial court to a potential final judgment problem. Before the parties and the appellate courts expend resources resolving the appeal, it is important to examine the rules of practice, statutes and our case law to determine whether an appeal can be taken from that judgment. See General Statutes §§ 51-197a and 52-263; Practice Book §§ 61-2 through 61-5. In *Meribear Productions, Inc.* v. *Frank*, 328 Conn. 709, 183 A.3d 1164 (2018), we held in the context of a court trial that, when legally consistent theories of recovery have been litigated but not all theories have been ruled on, there is no final judgment. The present appeals require us to determine whether the same threshold jurisdictional rule applies in the context of civil jury trials. We hold that it does and are therefore compelled to vacate the judgment of the Appellate Court and to remand this case to that court with direction to dismiss the appeals for lack of subject matter jurisdiction.

The Appellate Court's opinion contains the relevant facts and procedural history of this case, which we briefly summarize. The plaintiff, John B. Clinton, and the defendants, Michael E. Aspinwall, Steven F. Piaker, and David W. Young, organized CCP Equity Partners, LLC (CCP), as a Delaware limited liability company and executed an amended operating agreement. *Clinton* v. *Aspinwall*, 200 Conn. App. 205, 207, 238 A.3d 763 (2020). The parties founded CCP "to provide management services to, and serve as the general partner of, certain private equity funds. Pursuant to the [operating] agreement, each member was to serve as a manager . . . on the board of managers (board)." Id., 207–208. The operating agreement entrusted the board, but not the members, with the management of CCP. See id., 208 n.2. The board also created a capital reserve fund of $3 million to fund future expenses of the company. Id., 208.

Subsequently, "the members decided not to raise investor capital to create another private equity fund. The members expected all CCP operations to close and that substantially all portfolio companies would be liquidated . . . ." Id. The defendants, "who controlled 61 percent of the interests of CCP, voted to amend § 8.1 of the [operating] agreement, over the objections of the plaintiff" and another member, Preston Kavanagh. Id. "Before the amendment, § 8.1 provided that general distributions [from the capital reserve fund] shall be made pro rata among the members, in proportion to their capital accounts. The amendment added language to the section, providing that distributions could other-

wise be determined by the consent of all members. The defendants [enacted] this amendment pursuant to § 2.5[1] of the [operating] agreement." (Footnote added; footnote omitted.) Id., 208–209.

Kavanagh then sued CCP and the remaining members. Id., 209. The defendants held a meeting to vote to remove Kavanagh from CCP. Id. At the same meeting, "the plaintiff challenged the necessity of CCP's $3 million capital reserve. The defendants explained that the reserve was necessary to meet CCP's obligations to investors for several more years, to defend against Kavanagh's lawsuit, and for the possibility that the plaintiff [might] take legal action against CCP." Id. Several years later, "the defendants voted to remove the plaintiff as a member of CCP, also pursuant to § 2.5 of the [operating] agreement." Id., 210.

The plaintiff then brought the present action. After motion practice and amendment, there remained a two count complaint at the time of trial. The operative complaint alleged that the defendants breached their contractual and fiduciary duties based on their having voted to amend the operating agreement (amendment claim), voted to remove the plaintiff as a member of CCP (member removal claim), and maintained a capital reserve fund of $3 million when it was no longer needed (capital reserve claim). Id. The plaintiff alleged that, because of their acts, the defendants had breached the fiduciary duties they owed to him under Connecticut or Delaware law, and breached § 3.4 of the operating agreement, which requires managers to exercise their best judgment in operating the company. Id., 210–11.

Prior to trial, the defendants moved to strike the complaint. Citing *Nemec* v. *Shrader*, 991 A.2d 1120 (Del. 2010), the defendants argued that the breach of fiduciary duty claims failed because Delaware law forecloses those claims when they seek to override contractual terms. The trial court denied the motion, ruling that it did not matter if Connecticut or Delaware law governed the breach of fiduciary duty claims because, in either jurisdiction, members and managers of limited liability companies owe each other fiduciary duties, and the plaintiff had alleged facts sufficient to establish a breach of those duties.

The parties tried the case to a jury. See *Clinton* v. *Aspinwall*, supra, 200 Conn. App. 212. "The jury verdict form first asked the jury to decide the three breach of contract counts. Only if the jury found in favor of the defendants on those counts . . . was it then asked to address the two breach of fiduciary duty counts, related to the member removal and the capital reserve." (Footnote omitted.) Id., 212–13.[2] The plaintiff did not object to the jury instructions or the verdict form.[3] "[T]he jury returned its verdict in favor of the plaintiff on the three breach of contract counts. The jury, therefore, did not reach the two breach of fiduciary duty counts." Id., 214.

The jury awarded the plaintiff $146,901 for breach of contract on the amendment claim, $672,208 for breach of contract on the member removal claim, and $303,426 for breach of contract on the capital reserve claim. Id. The trial court denied the defendants' motions for judgment notwithstanding the verdict and to set aside the verdict and, after an evidentiary hearing, granted the plaintiff's motion for attorney's fees and costs pursuant to the operating agreement, awarding the plaintiff $716,200 in attorney's fees and $6118.75 in costs. See id. Judgment therefore was rendered in the plaintiff's favor on the breach of contract claim contained in count two. No judgment of any kind was rendered on the fiduciary duty count.

The defendants appealed to the Appellate Court, which affirmed in part and reversed in part the judgment of the trial court and remanded the case for a new hearing on the issue of attorney's fees and costs. See id., 229. Specifically, the Appellate Court reversed the judgment as to the plaintiff's amendment and member removal claims and ordered the trial court to render judgment in favor of the defendants on those two claims. Id., 222. The Appellate Court affirmed the judgment as to the plaintiff's capital reserve claim. Id., 228. In a footnote, the Appellate Court also declined the plaintiff's invitation to remand the case to the trial court with direction to render judgment in favor of the plaintiff on the parallel fiduciary duty claim in the event that the judgment as to any of the three breach of contract claims was reversed. See id., 222 n.19. The Appellate Court concluded that, because the plaintiff had not objected to the verdict form instructing the jury to bypass the fiduciary duty counts, "the plaintiff failed to preserve [that] claim." Id.

The plaintiff and the defendants sought certification to appeal from the Appellate Court's judgment. We granted both petitions.[4] Prior to oral argument before this court, and citing *Meribear Productions, Inc.* v. *Frank*, supra, 328 Conn. 709, we ordered the parties to file supplemental briefs providing "reasons, if any, why the appeal[s] should not be dismissed for lack of a final judgment because the jury did not reach, and the trial court did not render judgment on, the first count of the complaint, which alleged that the defendants had breached their fiduciary duty."[5] We now determine that the defendants did not appeal from a final judgment, and, therefore, the Appellate Court lacked jurisdiction to hear the defendants' appeals.

I

To address the question of appellate jurisdiction properly, we must first determine whether Connecticut or Delaware law guides our final judgment analysis. In their supplemental briefs to this court, both parties agree that Connecticut law applies to the question of

whether there is an appealable final judgment. We agree with the parties. Notwithstanding which substantive law might apply to the merits of a dispute, it is well established that we apply the procedural law of Connecticut to "matters of judicial administration and procedure." *Reclaimant Corp.* v. *Deutsch*, 332 Conn. 590, 593, 211 A.3d 976 (2019). Thus, Connecticut law governs procedural issues, such as standing, which affect our subject matter jurisdiction to hear appeals. See, e.g., *Ferri* v. *Powell-Ferri*, 326 Conn. 438, 447, 165 A.3d 1137 (2017). It is similarly well established that, because the right of appeal is purely statutory, "[t]he lack of a final judgment is a jurisdictional defect that mandates dismissal." *Blondeau* v. *Baltierra*, 337 Conn. 127, 135, 252 A.3d 317 (2020). Connecticut law therefore governs whether the defendants appealed from a final judgment in this case, in which there has never been an adjudication of the fiduciary duty count. The jury, following the trial court's instructions, never considered the count containing the fiduciary duty claims because it found in favor of the plaintiff on his breach of contract claims. The court never disposed of the fiduciary duty count in any fashion.

Under Connecticut law, a judgment that "disposes of only a part of a complaint is not final, unless it disposes of all of the causes of action against the appellant." *Meribear Productions, Inc.* v. *Frank*, supra, 328 Conn. 717. When the "trial court disposes of one count in the plaintiff's favor, such a determination implicitly disposes of legally inconsistent, but not legally consistent, alternative theories." Id., 723. Claims are legally inconsistent, or mutually exclusive, when establishing the elements of one claim precludes liability on the other claim; it is then "fair to infer that a judgment in favor of the plaintiff on one count legally implies a judgment in favor of the defendant on the other count." (Emphasis omitted.) Id., 722. On the other hand, the plaintiff may establish legally consistent alternative theories but may not recover twice for the same injury. Id. In that case, a ruling in the plaintiff's favor on one count "does not imply as a matter of fact or law whether the plaintiff has established the defendant's liability under the other count"; id., 723; and, therefore, presents a final judgment problem.

Although Connecticut procedural law governs the final judgment issue, both parties also appear to agree that Delaware law applies to the substantive claims pursuant to the choice of law provision contained in the operating agreement. We agree with the parties that Delaware law governs the substantive matters in the present case, including whether the plaintiff's breach of contract and breach of fiduciary duty counts are legally consistent or inconsistent. See id., 721 (looking to elements necessary to establish claims to determine whether claims are legally consistent or inconsistent). We therefore must determine whether, under Delaware

law, a claim of breach of contract and a claim of breach of fiduciary duty are legally inconsistent, such that establishing the elements of one claim precludes liability on the other claim.

Whether contractual or fiduciary principles govern a particular claim is a fact specific and contextual determination that does not lend itself to a bright line rule. *Moore Business Forms, Inc.* v. *Cordant Holdings Corp.*, Docket No. Civ. A. 13911, 1995 WL 662685, *6 (Del. Ch. November 2, 1995). The leading Delaware case is *Nemec* v. *Shrader*, supra, 991 A.2d 1120, in which the plaintiffs raised claims of breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and unjust enrichment. Id., 1125. The defendants moved to dismiss the complaint on grounds including that the plaintiffs' breach of fiduciary duty claim had to be adjudicated as a breach of contract claim. See id., 1125, 1129. The Court of Chancery granted the defendants' motion and dismissed the complaint. Id., 1125. In upholding the judgment of the Court of Chancery, the Delaware Supreme Court explained that, when "a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim. In that specific context, any fiduciary claims arising out of the same facts that underlie the contract obligations would be foreclosed as superfluous." Id., 1129; see id., 1129 n.31, citing *Blue Chip Capital Fund II Ltd. Partnership* v. *Tubergen*, 906 A.2d 827, 833 (Del. Ch. 2006). The Delaware Court of Chancery has explained the reasoning behind this rule: to allow a fiduciary duty claim to "coexist in parallel with [a contractual] claim" would undermine "the primacy of contract law over fiduciary law in matters involving . . . contractual rights and obligations." (Internal quotation marks omitted.) *Grayson* v. *Imagination Station, Inc.*, Docket No. Civ. A. 5051-CC, 2010 WL 3221951, *7 (Del. Ch. August 16, 2010), quoting *Gale* v. *Bershad*, Docket No. Civ. A. 15714, 1998 WL 118022, *5 (Del. Ch. March 4, 1998). The Delaware Court of Chancery has characterized the rule as requiring that breach of fiduciary duty claims "must be dismissed" when they are "duplicative of [a party's] breach of contract claims." *In re WeWork Litigation*, Docket No. 2020-0258-AGB, 2020 WL 6375438, *11 (Del. Ch. October 30, 2020). When "those rights arise from a contract that specifically addresses the matter at issue, the court evaluates the parties' conduct within the framework they themselves crafted, instead of imposing more broadly defined equitable duties." *Grunstein* v. *Silva*, Docket No. C.A. 3932-VCN, 2009 WL 4698541, *6 (Del. Ch. December 8, 2009).

Delaware law does allow for both a breach of contract claim and a breach of fiduciary duty claim to move forward, even though both claims arise from the same nucleus of operative fact: When "there is an independent basis for the fiduciary duty claims apart from the contractual claims, even if both are related to the same

or similar conduct . . . the fiduciary duty claims will survive." (Internal quotation marks omitted.) *Grayson* v. *Imagination Station, Inc.*, supra, 2010 WL 3221951, *7. There is an independent basis for breach of fiduciary duty claims when (1) they depend on additional facts, (2) are broader in scope, and (3) involve different considerations in terms of a potential remedy. *Bäcker* v. *Palisades Growth Capital II, L.P.*, 246 A.3d 81, 109 (Del. 2021); *Schuss* v. *Penfield Partners, L.P.*, Docket No. Civ. A. 3132-VCP, 2008 WL 2433842, *10 (Del. Ch. June 13, 2008). Some courts have declined to dismiss as duplicative fiduciary duty claims when the parties' contract itself imposes fiduciary duties. See *RJ Associates, Inc.* v. *Health Payors' Organization Ltd. Partnership, HPA, Inc.*, Docket No. 16873, 1999 WL 550350, *9–10 (Del. Ch. July 16, 1999); see also *In re Mobilactive Media, LLC*, Docket No. Civ. A. 5725-VCP, 2013 WL 297950, *20 n.219 (Del. Ch. January 25, 2013). Neither party argues in this court that these conditions apply.

The reason that Delaware law requires that courts dismiss fiduciary duty claims when there is no independent basis apart from the contractual claim is not because they cannot, as a matter of law, be tried together. Instead, to honor parties' expectations in drafting agreements, Delaware law evidently requires courts to dismiss these claims in certain circumstances for policy reasons. See, e.g., *Moore Business Forms, Inc.* v. *Cordant Holdings Corp.*, supra, 1995 WL 662685, *6 ("[T]he [fiduciary] duties sought to be enforced have a clearly contractual source. This dispute among these parties relates to an event specifically anticipated and expressly provided for in their contract."). Nothing about this policy suggests that the claims in the present case are legally inconsistent such that establishing the elements of breach of contract, as provided by Delaware law, precludes liability on the breach of fiduciary duty count. The elements of breach of contract and breach of fiduciary duty do not conflict under Delaware law or under Connecticut law.[6] As the Delaware Court of Chancery has recognized, although a plaintiff may advance alternative theories or claims, such as breach of contract and breach of fiduciary duty at the pleading stage, a plaintiff can recover only "a single judgment, and a plaintiff cannot recover duplicative remedies." *Garfield ex rel. ODP Corp.* v. *Allen*, 277 A.3d 296, 360 (Del. Ch. 2022). These cases make clear that claims of breach of contract and breach of fiduciary duty are more akin to legally consistent alternative theories that prevent double recovery, not legally inconsistent as that phrase is defined under Connecticut procedural law— with the elements of breach of contract precluding liability on a breach of fiduciary duty claim. Therefore, under *Meribear Productions, Inc.*, there is no final judgment, and we leave the resolution as to whether the fiduciary duty claim can proceed under Delaware law to the trial court. See *Meribear Productions, Inc.* v.

*Frank*, supra, 328 Conn. 723–24.

Nevertheless, the defendants contend that they properly appealed from a final judgment because the plaintiff did not object to the jury verdict form and did not appeal from the Appellate Court's conclusion that the plaintiff effectively abandoned his fiduciary duty claims by failing to object to the verdict form. See *Clinton* v. *Aspinwall*, supra, 200 Conn. App. 222 n.19. We disagree for two reasons.

First, in posttrial motions, the plaintiff contested the defendants' characterization of his fiduciary duty claims as no longer relevant. He argued that the verdict form was devised to avoid an inconsistent verdict because a finding in his favor on the breach of contract claim implied a finding in his favor on his breach of fiduciary duty claim. Consistent with this position and citing *Meribear Productions, Inc.*, the plaintiff argued in supplemental briefing to this court that there was no final judgment because the breach of contract and breach of fiduciary duty claims were legally consistent. The jury never reached the fiduciary duty claims, and the trial court never ruled on them. There is no record of whether the trial court ever considered whether, under Delaware law, the claims are superfluous or duplicative or whether the fiduciary duty claim can coexist with the contract claim. The fact that the defendants contest the plaintiff's characterizations serves to strengthen, rather than to undercut, the conclusion that there has not yet been a final judgment.

Second, under our case law, appeals from nonfinal judgments are void ab initio. See, e.g., *Stroiney* v. *Crescent Lake Tax District*, 197 Conn. 82, 86 n.3, 495 A.2d 1063 (1985). That is to say, we must measure whether there is a final judgment based on the record at the time the appeal was taken. See id. Recalling that it was the *defendants* who appealed from the adverse jury verdict on the plaintiff's breach of contract claims, as discussed previously, the judgment in this case was not final under Connecticut law.

In the same way, any attempt by the plaintiff to render the judgment final, nunc pro tunc, is ineffectual under *Stroiney*. Specifically, although he took the position in his supplemental brief that the judgment was not final, the plaintiff's counsel represented at oral argument before this court that his client "would like nothing better than for [this court] to bring finality to this case that he's been trying to get finality on for ten years. If that costs the fiduciary duty claim, he's willing to pay that price." In *Stroiney*, this court rejected a more explicit offer by counsel at oral argument to cure a final judgment defect by withdrawing "claims for injunctive relief and for damages . . . [while] reserving the right to bring a separate suit to obtain such relief." *Stroiney* v. *Crescent Lake Tax District*, supra, 197 Conn. 86 n.3. We explained that it was "futile for the plaintiffs to

attempt to waive their claims for additional relief in order to meet the final judgment requirement, because a jurisdictional defect renders the appeal void ab initio and is, therefore, not waivable. . . . [T]here is a complete lack of jurisdiction, and the only power this court has over such a case is to dismiss for lack of jurisdiction. This court has no power to allow the plaintiff to, in effect, amend his complaint by waiving any claims for further relief." (Citation omitted.) Id.; cf. *Zamstein* v. *Marvasti*, 240 Conn. 549, 555–56, 692 A.2d 781 (1997) (judgment became final after trial court granted motion to strike four of six counts because plaintiff, in motion for judgment, abandoned remaining claims, representing that he would withdraw counts and did so after court rendered judgment). No party has asked us to overrule *Stroiney* or that line of cases.

Although the statement by the plaintiff's counsel before this court manifests an understandable fatigue with this litigation, we are reluctant to take counsel's belated representations—that the plaintiff "would like nothing better than . . . finality" even if it "costs [him] the fiduciary duty claim"—to constitute an effective withdrawal or abandonment of his claims. This is especially so given that the plaintiff has consistently taken the position (including in his supplemental brief to this court) that the fiduciary duty claims remain undecided. If we were to reach the merits of the contractual claim and find favorably for the defendants, perhaps the plaintiff will want the opportunity to pursue the fiduciary duty claim.

Because, under Delaware law, breach of fiduciary duty is a legally consistent alternative theory of recovery to breach of contract, and the plaintiff has not withdrawn or unconditionally abandoned his fiduciary duty claims contained in count one of his complaint, those claims remain unadjudicated, and the trial court has not disposed of them. Accordingly, there was no final judgment for the defendants to have appealed from, and, thus, the Appellate Court lacked jurisdiction over the defendants' appeals.[7]

## II

Litigation involving multiple causes of action, counts, and theories of recovery presents case management challenges unique to each controversy, including whether all causes of action, counts, or theories should be adjudicated at once. In the context of a court trial, we have suggested that "the far better practice" is "for the trial court to fully address the merits of all theories litigated, even those that are legally inconsistent. If the trial court determines that the plaintiff has established more than one theory of recovery for the same injury, the trial court would render judgment in the plaintiff's favor on the primary count and render judgment for the defendant on the other(s), albeit solely due to the nature of the alternative claims." (Footnote omitted.)

*Meribear Productions, Inc.* v. *Frank*, supra, 328 Conn. 724. We have explained that, "[b]y so doing, we envision several economies that would inure to the benefit of the parties and the judicial system," including that, "[i]f the appeal proceeds, the case would typically be resolved in that appeal, thus substantially reducing the number of retrials and successive appeals."[8] Id.

The same wisdom applies to jury trials to protect against appeals from nonfinal judgments. Counsel and the trial court must consider precisely what information is needed from the jury to maximize the efficiency of the system in the event of an appeal. Toward that end, the trial court should always have the jury decide all counts of a complaint, except in the uncommon situation when doing so would result in a legally inconsistent finding that requires a new trial. See, e.g., *DaCruz* v. *State Farm Fire & Casualty Co.*, 268 Conn. 675, 693, 846 A.2d 849 (2004) ("[i]ntentional conduct and negligent conduct, although differing only by a matter of degree . . . are separate and mutually exclusive" (citation omitted; internal quotation marks omitted)). Jury instructions and jury interrogatories are useful tools to facilitate this exercise, keeping the jury focused while avoiding confusion. To do so, the jury instructions and jury interrogatories must be carefully crafted with this in mind. The trial court will then be equipped, after the jury is excused and after comment and briefing from counsel, with the information necessary to eliminate any duplication or other aspects of the verdict that cannot be entered by law as part of the judgment. In this case, for example, the trial court could have accepted verdicts on both the breach of contract count and the breach of fiduciary duty count and later determined whether it was necessary under Delaware law to vacate or set aside the verdict as to the fiduciary duty count.[9]

The judgment of the Appellate Court is vacated and the case is remanded to that court with direction to dismiss the defendants' appeals.

In this opinion the other justices concurred.

[1] Section 2.5 of the operating agreement provides in relevant part: "In addition to the other matters specified hereunder, subject to the prior approval by the [b]oard of [m]anagers, the consent of [m]embers holding 60 [percent] or more of the [p]ercentage [i]nterests shall be required for . . . (ii) the removal of a [m]ember other than on account of death or voluntary resignation . . . [and] (vii) any amendment to this [a]greement."

[2] "The plaintiff withdrew the breach of fiduciary duty claim related to the amendment to the agreement because the defendants were going to file a motion arguing that the claim was barred by the statute of limitations and, the plaintiff's counsel reasoned: [I]t's an issue that's largely covered by our breach of contract claim that it is going to make the jury deliberations and verdict form and jury interrogatories unduly confusing." (Internal quotation marks omitted.) *Clinton* v. *Aspinwall*, supra, 200 Conn. App. 213–14 n.13.

[3] The defendants objected to the jury instructions, seeking a ruling on whether § 3.4 of the operating agreement is a special defense, on which they have the burden of proof, or an immunity, on which the plaintiff has the burden of proof. The defendants also objected to the verdict form, seeking a verdict form that separately delineated their special defenses. The defendants have not raised any of these issues before this court.

[4] We certified the following issues for the defendants' appeal: (1) "Did

the Appellate Court correctly conclude that § 3.4 of the limited liability company operating agreement imposes an affirmative duty on the managers to exercise 'best judgment' but does not impose an affirmative duty on the managers to act in 'good faith'?" And (2) "[i]f the answer to the first question is in the affirmative, did the Appellate Court correctly conclude that the trial court's instruction to the jury that § 3.4 of the agreement 'prohibits actions that are taken in bad faith' constituted harmless error?" *Clinton* v. *Aspinwall*, 335 Conn. 980, 241 A.3d 703 (2020).

We also certified the following issue for the plaintiff's appeal: "Did the Appellate Court correctly conclude that the limited liability company operating agreement unambiguously provides that an action to amend the agreement or to involuntarily remove a member shall be performed by the consent of members controlling 60 percent or more of the company, without requiring approval by the board of managers?" *Clinton* v. *Aspinwall*, 335 Conn. 979, 241 A.3d 704 (2020).

[5] We also ordered that the parties' supplemental briefs should "address whether Delaware or Connecticut law applies to the final judgment issue. See *Reclaimant Corp.* v. *Deutsch*, 332 Conn. 590, 603–604, 211 A.3d 976 (2019)."

[6] Compare *Connelly* v. *State Farm Mutual Automobile Ins. Co.*, 135 A.3d 1271, 1279 n.28 (Del. 2016) (elements of breach of contract are (1) existence of contract, (2) breach of obligation imposed by that contract, and (3) resultant damage to plaintiff), and *Beard Research, Inc.* v. *Kates*, 8 A.3d 573, 601 (Del. Ch.) (elements of breach of fiduciary duty are (1) existence of fiduciary duty, and (2) defendant's breach of that duty), aff'd sub nom. *ASDI, Inc.* v. *Beard Research, Inc.*, 11 A.3d 749 (Del. 2010), with *CCT Communications, Inc.* v. *Zone Telecom, Inc.*, 327 Conn. 114, 133, 172 A.3d 1228 (2017) (elements of breach of contract are "the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages" (internal quotation marks omitted)), and *Rendahl* v. *Peluso*, 173 Conn. App. 66, 100, 162 A.3d 1 (2017) (elements of breach of fiduciary duty are (1) existence of fiduciary relationship that gives rise to duty of loyalty, obligation to act in best interests of plaintiff, and obligation to act in good faith in any matter relating to plaintiff, (2) defendant advanced his interests to detriment of plaintiff, (3) plaintiff sustained damages, and (4) damages were proximately caused by breach).

[7] The plaintiff may, of course, choose to withdraw his fiduciary duty count to create a final judgment. But, consistent with *Meribear Productions, Inc.*, he may do so only after the Appellate Court dismisses the defendants' appeals. See, e.g., *Meribear Productions, Inc.* v. *Frank*, supra, 328 Conn. 718.

[8] For example, if the trial court had rendered judgment in favor of the defendants on the fiduciary duty count, the plaintiff could have appealed from that adverse ruling.

[9] This process might function similar to that set out in *State* v. *Polanco*, 308 Conn. 242, 260–63, 61 A.3d 1084 (2013), which requires that, when a defendant is found guilty of greater and lesser included offenses in violation of the double jeopardy clause, the trial court must vacate the verdict on the lesser included offense.